of motion picture distribution and business conduct. It is not immoral, unethical, oppressive or unscrupulous for a motion picture distributor to unilaterally exercise exclusive rights conferred to it under the Copyright Act, 17 U.S.C. § 106, or to employ business practices that result in greater choices to movie-viewing consumers. See Storer Cable Communication v. City of Montgomery, 806 F. Supp. 1518 (M.D. Ala. 1992) (citing Sperry v. Florida ex. Rel. Florida Bar Ass'n, 373 U.S. 379, 385 (1963)).

3. There is no public policy, expressed by statute or otherwise, prohibiting a motion picture distributor from granting a clearance to an exhibitor that is in substantial competition with an exhibitor or exhibitors over whom the clearance has been requested, or making a unilateral business decision to license only one run of a motion picture; public policy encourages interbrand competition in the exhibition of motion pictures because that benefits the movie-going public by providing greater choices to movie-goers. See Theee Movies of Tarzana, 828 F.2d at 1399.

4. A distributor's exercise of its business judgment in licensing a motion picture to Showcase Orange, Showcase North Haven or York Square, which results in a temporary exclusive right to the licensed theatre, conforms to approved standards of motion picture distribution and business conduct and is permitted by virtue of statutory rights conferred under the Copyright Act, 17 U.S.C. § 106.

5. A Defendant's failure to license York Square, Showcase North Haven or Showcase Orange a motion picture when it is first exhibited in the New Haven area is neither an unfair trade practice that offends public policy nor a violation of

antitrust law. See Soffer, 1996 WL 194947, *2; see also Ben Elfman & Sons, Inc. v. Criterion Mills, Inc., 774 F. Supp. 683, 687 (D. Mass. 1991); J. H. Westerbeke Corp. v. Onan Corp., 580 F. Supp. 1173, 1192 (D. Mass. 1984) (specific practices permitted under antitrust law cannot constitute unfair trade practices under unfair trade practices statutes).

6. When licensing a motion picture, it is not unreasonable, illogical or illegal for a distributor to favor a theatre or theatres that will return the distributor greater revenues. United States v. Syufy, 903 F.2d 659, 669 (9th Cir. 1990).

7. Increased competition alone, resulting from established pro-competitive practices does not constitute a cause of action under CUTPA. McLaughlin Ford, Inc., 192 Conn. 558.

8. A clearance is a legitimate part of a motion picture license. See United States v. Paramount Pictures, Inc., 334 U.S. 131, 144-48 (1948); Theee Movies of Tarzana, 828 F.2d at 1399; Soffer, 1996 WL 194947. The issuance of clearances is not an anti-competitive business practice, and therefore, does not offend any public policy against monopolies. See Soffer, 1996 WL 194947 at *1.

9. Some of the relevant factors in determining whether substantial competition exists between theatres include, but are not limited to: proximity of theatres to each other; the lack of transportation barriers precluding travel between theatres; whether theatres advertise in the same newspapers; and, whether the theatres draw patrons from the same geographical area. Soffer, 1996 WL 194947 at **4-5.

10. Intrabrand competition exists between theatres simultaneously exhibiting the

same film. Interbrand competition exists between theatres exhibiting two different films. See Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 53 n. 19 (1977); Soffer, 1996 WL 194947 at n. 10.

11. A clearance promotes interbrand competition by requiring exhibitors to find alternative films to exhibit, promoting consumer choice by the licensing of more and different movies in an area, promotes competition between theatres for product, and protects the licensed theatre from having its audience and its revenues from the picture diverted to other theatres seeking the same patrons for the same film. See Theee Movies of Tarzana, 828 F.2d at 1399.

12. Motion pictures are copyrighted works and their distribution and exhibition are protected by the Copyright Act. Under § 106 of the Copyright Act, a copyright owner possesses the exclusive right "to distribute, by sale or otherwise, copies of the copyright work ... by rental, lease or lending," and "with respect to particular types of artistic works, the right to publicly perform ... [and] display them." 17 U.S.C. § 106 (3)-(5); see generally Computer Associates Intl. Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992).

13. The exclusive right to distribute protected works in § 106 of the Copyright Act encompasses the right to refrain from licensing a work or to exclude others from using the copyrighted work. See Data General Corp. v. Grumman Systems Support Corp., 36 F. 3d 1147, 1187 (1st Cir. 1994).

14. A distributor cannot be compelled to license its copyrighted works, and is free to exercise his own independent business discretion as to the parties with which he will deal. See United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465 (1919).

15. In the absence of unlawful collusion or monopoly power, antitrust laws and trade legislation such as CUTPA cannot be used to compel a copyright holder to license its protected works to everyone. See Intergraph Corp. v. Intel Corp., 195 F.3d 1346, 1362 (Fed. Cir. 1999); United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465 (1919).

16. A distributor's right to exclude others from using a copyrighted work is in the public interest and, the copyright holder's unilateral refusal to license a copyrighted work is presumptively valid. Data General Corp., 36 F.3d 1147, 1187. The burden of overcoming this presumption is firmly on the Plaintiff. In re Independent Service Organizations Antitrust Litigation, 203 F.3d 1322, 1329 (Fed. Cir. 2000).

17. Federal law may preempt state law claims in the following circumstances: (1) "express preemption," (2) "field preemption" or "implied preemption," or (3) "conflict preemption." See Crosby v. National Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288 (2000); see also Orson, Inc. t/a Roxy Screening Rooms, 189 F.3d at 381.

18. The Copyright Act incorporates an explicit preemption provision stating that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title.

Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a).

19. Section 301 of the Copyright Act establishes a two-part test for determining whether a state statutory claim is preempted. See Harper & Row, Publishers, Inc., 723 F.2d at 199-200. First, "the work of authorship in which rights are claimed must fall within the 'subject matter of copyright' as defined in §§ 102 and 103 of the Act." Harper & Row Publishers, Inc., 723 F.2d at 200. Second, a determination must be made as to whether the state statute asserted by the Plaintiff creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). This requirement has been construed to mean that "[w]hen a right defined by state law may be abridged by an action which, in and of itself, would infringe one of the exclusive rights [enumerated in section 106], the state law in question must be deemed preempted." Harper & Row Publishers, Inc., 723 F.2d at 200; see also Rubin, 836 F.Supp. at 923.

Respectfully Submitted,

THE PLAINTIFF,

By _/s/ Peter Spodick_
Peter C. Spodick, Esquire
592 Central Avenue
New Haven, Connecticut 06515
Tel.: (203) 387-5714
Fax.: (203) 773 3104
e-mail: peterspodick@aol.com

- Its Attorney -


THE DEFENDANTS,

By _/s/_
Richard W. Bowerman (ct 04181)
Ben A. Solnit (ct 00292)
Elizabeth K. Andrews (ct 20986)
Tyler Cooper & Alcorn, LLP
205 Church Street
Post Office Box 1936
New Haven, Connecticut 06509
Tel.: (203) 784-8200
Fax: (203) 865-7865
e-mail: bowerman@tylercooper.com
         solnit@tylercooper.com
         eandrews@tylercooper.com

- Their Attorneys -

57

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing was hand-delivered on November 14, 2003 to the following:

Peter C. Spodick, Esquire
592 Central Avenue
New Haven, Connecticut 06515

Richard W. Bowerman
Ben A. Solnit
Elizabeth K. Andrews
Tyler Cooper & Alcorn, LLP
205 Church Street
Post Office Box 1936
New Haven, Connecticut 06509

                                                          _____
                                                          Peter C. Spodick

                                                          _____
                                                          Richard W. Bowerman (ct 04181)

**EXHIBIT A**

# RONALD W. WANLESS

733 Huntley Drive Los Angeles, California 90069 310-659-6331

## Qualifications

Over twenty years successful experience in senior level marketing management positions with motion picture companies and as an independent marketing consultant. Very strong hands-on ability and talent in all areas of movie marketing including strategic planning, public relations, media planning, creative advertising and research. Excellent administrator with proven interpersonal and effective financial management skills.

## Experience

**MARKETING CONSULTANT/PRINCIPAL-Wanless Marketing**, Los Angeles- 12/91 to 9/01. Successfully offering independent marketing consulting services to corporate, consumer products and entertainment companies utilizing the areas of specialization described above. Clients have included: Miramax Films, The Association of Film Commissioners International, Coors Brewing Company, Andersen Consulting, Seagram Americas, Absolut Vodka, Spencer Communications, Whittle Communications, Special Report TV, N.W. Ayer Advertising and several new Internet start-up companies.

**SENIOR VICE PRESIDENT, WORLDWIDE MARKETING-The Samuel Goldwyn Company**, Los Angeles-6/89-11/91. Directed all aspects of worldwide marketing for multiple divisions of this successful entertainment company including: motion picture theatrical (domestic and international), video and television, as well as directing all other corporate marketing needs. Supervised a staff of twenty, responsible for budgets in excess of $50 million dollars, and handled the national release of fifteen motion pictures each year. Spearheaded marketing campaigns for some of the most successful films in Goldwyn history, while at the same time streamlining the marketing operation and significantly reducing costs. Reported directly to the Chairman, Samuel Goldwyn, Jr. Left to form my own independent consulting practice.

**PRESIDENT, WORLDWIDE MARKETING-New Line Cinema**, New York and Los Angeles, 5/87-5/89. Directed all aspects of theatrical, international and corporate marketing for the country's largest and most successful independent film company. Also bore responsibility for managing financial public relations and investor relations as needed due to New Line's status as a newly public company. Managed budgets in excess of $70 million dollars, developed creative and media campaigns for 25 films a year, and reported directly to the Chairman, Robert Shaye. Left to accept an attractive unsolicited offer from the Goldwyn Company.

**SENIOR VICE PRESIDENT, MARKETING AND PUBLICITY-Atlantic Entertainment Group**, New York and Los Angeles, 3/84-3/87. Directed all aspects of marketing and publicity for one of the country's largest independent entertainment

companies and successfully completed the mandate to create a strong internal marketing operation where previously most of these functions had been outsourced. Reported directly to the Chairman. Left to accept an attractive unsolicited offer from New Line Cinema.

**VICE PRESIDENT/MANAGEMENT SUPERVISOR-Diener/Hauser/Bates, Division Ted Bates Advertising (later Saatchi & Saatchi)**, New York and Los Angeles, 9/72-3/84. Successfully managed an account team handling fourteen major motion picture accounts in addition to performing all of the normal functions of an executive at a major $300 million dollar+ advertising agency. Consistently brought in new business and never lost a client. Spent 12 years at the agency, starting in an entry-level position and eventually working my way up to be their youngest Vice President. Left to accept a challenging offer from a long time client, Atlantic Releasing. During this time Diener/Hauser was the pre-eminent entertainment advertising agency in the country developing commercials and creative and placing media for such long-term clients as The Walt Disney Company, Universal Pictures, Warner Brothers, 20th Century Fox, United Artists, Columbia Pictures, Paramount Pictures and NBC Television along with many other entertainment clients.

**Education**

B.A, (English), Quinnipiac College-Hamden, Connecticut, 1968-Recipient Distinguished Alumni Award, October, 1991.

**Memberships**

- Academy of Motion Picture Arts and Sciences, The Foundation of Motion Picture Pioneers.

- Academy of Motion Picture Arts and Sciences Foreign Film Screening Committee-1993-2000

**Charitable/Civic Work**

- Boardmember-Caring for Babies with AIDS (Los Angeles)-1997 to 2001

- Boardmember-Labor Day LA Foundation-1994-2000, Chairman Charitable Grants Committee 1995, 1998 and 2000.