## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was hand-delivered on November 14, 2003 to the following:

Peter C. Spodick, Esq.
592 Central Avenue
New Haven, CT 06515

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Ben A. Solnit ct00292

3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BROADWAY THEATRE CORP., | : | Civil Action No.: 3:00-CV-00706 (SRU) |
|    Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| BUENA VISTA PICTURES | : | |
| DISTRIBUTION, et al., | : | |
|    Defendants | : | November 14, 2003 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
PLAINTIFF'S DAMAGES ANALYSIS**

**I.    INTRODUCTION**

In accordance with the scheduling order entered in this case, plaintiff provided a document entitled "Plaintiff's Analysis of Damages" to defendants on March 3, 2003 (copy attached). Despite its title, it contains no analysis. Further, it attempts to measure lost revenues instead of lost profits. Finally, it does not address causation.

**II.    ARGUMENT**

    A.    The Plaintiff's Damages "Analysis" Is Based On Speculation

Defendants' economic expert, George L. Priest, analyzed this document at pp. 20-21 of his October 15, 2003 report as follows:

D. <u>Mr. Spodick's Damages Analysis</u>

55. Finally, Mr. Spodick has filed what is referred to as the "Plaintiff's Analysis of Damages" that concludes that the defendants' clearance practices have resulted in damages equal to $2,060,305. This "measurement" consists, first and without support, of picking the year 1993 as a base; second, noting that ticket prices at the York Square have increased by 28 percent in nominal dollars from 1993 to 2002; and, third, claiming as damages attributable to the defendants' practices any decline in annual revenues from 1993 to the present times 128 percent.

56. Mr. Spodick is not trained in economic analysis. Meaning no disrespect, this "estimate" bears no relation to an economic analysis of damages that might survive peer-review. Among other flaws, there is no basis for choosing 1993 as a base year, except that it was one of York Square's highest grossing years. Secondly, Mr. Spodick has made to attempt to distinguish changes in York Square revenues allegedly attributable to the defendants' clearance practices as against other economic changes in the cinema exhibition market. It is an economic truism that, when ticket prices rise, demand declines. In Mr. Spodick's approach, to the contrary, any decline in demand is multiplied times the 128 percent increase in price.[1]

57. A careful analysis of damages in this case--assuming the defendants are found to be liable for losses--would require a counter-factual reconstruction of the profits (all of Mr. Spodick's numbers derive from gross revenues, not profits)

---

[1] This means that if Mr. Spodick had raised his prices further, his damages would have increased.

2

>that would have been earned on the films that York Square would have exhibited but for the clearances against the profits earned on the films that were exhibited. It would also require the day and date revenue comparisons similar to those presented in Table 8. To date, Mr. Spodick has not indicated the films he would have exhibited but for the clearance practices nor the number of tickets he believes he would have sold for those films. Finally, Mr. Spodick's numbers do not distinguish film profits from concession profits.

It is well settled that damages may not be awarded on mere speculation. See, e.g., DeChico v. Metro-North Commuter R.R., 758 F.2d 856, 861 (2d Cir. 1985) (trial court correctly refused to submit claim of damages to the jury that was "too speculative"); United Banana Co. v. United Fruit Co., 362 F.2d 849, 851 (2d Cir. 1966) (plaintiff failed to prove damages resulting from claimed antitrust violation; its "claim of damages here are either too speculative or de minimis); Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48, 78 (1998) (award of damages reversed where the evidence "failed to remove the question of damages from the realm of speculation ...."). This general principle applies with equal force to claims brought under CUTPA for lost profits. "[S]uch damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty." Gargano v. Heyman, 203 Conn. 616, 621 (1987). (citations omitted)

It is equally well settled that under Federal Rule of Evidence 702, expert testimony may be admitted only if it consists of "scientific, technical, or other specialized knowledge" and the witness

3

is "qualified as a expert by knowledge, skill, experience, training, or education ...." As the Supreme Court explained in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc</u>., 509 U.S. 591, 589-90 (1993), "The subject of an expert's testimony must be 'scientific ... knowledge' .... [T]he word 'knowledge' connotes <u>more than subjective belief or unsupported speculation</u>" (footnote omitted, emphasis added).

Plaintiff's damages analysis is unsupported speculation. Accordingly, it is not admissible on the issue of damages.

B.  <u>Lost Revenues Is Not The Proper Measure of Damages</u>

Plaintiff's "Analysis" uses lost revenues as the measure of its claimed damages. However, lost profits is the proper measure of damages stemming from a claimed business loss. <u>See</u>, <u>e.g.</u>, <u>Electro-Minatures Corp. v. Wendon Co., Inc</u>., 771 F.2d 23, 27 (2d Cir. 1985) (profits on lost sales was proper measure of damages). <u>See</u> <u>also</u> Report of George L. Priest, <u>supra</u>, ¶ 57 (damages must be measured by profits, not gross revenues). Plaintiff's damages analysis is therefore inadmissible on this ground as well.

C.  <u>Plaintiff's "Analysis" Fails To Address Causation</u>

Even if one assumed, <u>arguendo</u>, that plaintiff could demonstrate unfair trade practices by defendants and lost profits, that would not suffice to prove damages. Plaintiff would still have to prove that its lost profits damages were <u>caused</u> by the unfair trade practices. <u>See, e.g.</u>, <u>Omega</u>

4

Engineering, Inc. v. Eastman Kodak Co., 30 F. Supp. 2d 226, 264 (D. Conn. 1998) (plaintiff's expert's "inability to meaningfully isolate [the claimed misconduct] as the cause [of the claimed damages] renders any lost profits calculation highly suspect and fundamentally unsound.") (footnote omitted).  Plaintiff's utter failure to address the issue of causation in its damages analysis is a third reason it is inadmissible.

## III.   CONCLUSION

For the foregoing reasons, defendants' Motion in Limine should be granted.

```
                    THE DEFENDANTS,
                    BUENA VISTA PICTURES DISTRIBUTION, et al.

            BY:     _____
                    Richard W. Bowerman (ct04181)
                    Ben A. Solnit (ct00292
                    Elizabeth K. Andrews (ct20986)
                    Tyler Cooper & Alcorn, LLP
                    205 Church Street
                    P.O. Box 1936
                    New Haven, CT   06509-1910
                    Tel. No.:     203.784.8200
                    Fax. No.:     203.865.7865
                    E-Mail:       bowerman@tylercooper.com
                                  solnit@tylercooper.com
                                  eandrews@tylercooper.com
```

5

**EXHIBIT**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BROADWAY THEATRE CORP. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| V. ) | CIVIL ACTION NO: 300-CV-00706 (SRU) |
| ) | |
| ) | |
| ) | |
| BUENA VISTA PICTURES ) | |
| DISTRIBUTION, COLUMBIA ) | |
| PICTURES INDUSTRIES, INC., ) | |
| DREAMWORKS DISTRIBUTION L.L.C., ) | |
| LIONS GATE FILMS INC., ) | |
| METRO-GOLDWYN-MAYER ) | |
| DISTRIBUTION CO., MIRAMAX FILM ) | |
| CORP., NEW LINE CINEMA ) | |
| CORPORATION, PARAMOUNT ) | |
| PICTURES CORPORATION, SONY ) | |
| PICTURES RELEASING ) | |
| CORPORATION, UNIVERSAL FILM ) | |
| EXCHANGES, INC., WARNER BROS. ) | |
| DISTRIBUTING, AND USA FILMS, L.L.C. ) | March 3, 2003 |

**PLAINTIFF'S ANALYSIS OF DAMAGES**

Pursuant to the revised Form 26(f) Report of the Parties, dated February 18, 2003, the Plaintiff submits this analysis of damages.

Damages may be measured by comparing Plaintiff's 1997-2001 gross receipts with gross receipts from 1993. Until 1993, the defendants' clearance practices, while still objectionable, still allowed the Plaintiff's cinemas to operate profitably. After 1993, Defendants' conduct limiting Plaintiff's right to exhibit films became increasingly restrictive. In 1993, the York Square Cinemas' gross income was $699,018.

In 1993, the adult ticket price averaged $5.46. The matinee and senior citizen ticket price was $2.73. The 2002 adult ticket price was $6.60. The 2002 matinee and senior citizen ticket price was $4.75.

The percentage increase in admission prices from 1993 to 2002 is 28%. The Plaintiff estimates that the ratio of adult tickets to senior citizen/matinee tickets is 3 to 1. In 1993, three adults and one senior citizen paid a combined $19.11. In 2002, three adults and one senior citizen paid a combined $24.55. The $5.44 increase in gross admission prices is 28% greater than was charged in 1993.

The Plaintiff believes that it's annual gross receipts should be at least the $ 699,020 grossed in 1993, plus an increase of 28%. Plaintiff's projected total annual gross, including the 28% increase, is $856,345. These totals do not assume or project any growth, or increase, in the number of patron tickets sold annually since 1993.

The Plaintiff asks this Court to calculate damages based upon the difference between the projected annual gross receipts of $856,345, and the actual annual gross receipts of the York

Square Cinemas. Damages are claimed for each of the three years to which this complaint is statutorily limited, and for the time accrued since the date of filing.

The annual gross receipts reported on the Plaintiff's tax returns are presented in the "expert" filing with this Court by Dominic Scarano, CPA. Those annual receipts are:

1997: $551,944

1998: $489,951

1999: $545,912

2000: $454,418

2001: $528,540

2002: $507,000 (accountant's estimate prior to tax filing)

The gross income for the 6 calendar years essentially encompassing this complaint is $3,077,765. The 6 year total of projected annual receipts, grossed in the absence of Defendants' unlawful conduct, is $5,138,070. The difference is $2,060,305. This is the projected additional revenue which would have been grossed by the Plaintiff in the absence of Defendants' unlawful conduct.

The Plaintiff estimates its damages, from the time of filing until the present, at $2,060,305, plus the cost of this litigation.

The Plaintiff also asks this Court for all other damages which the Court feels may be due to the Plaintiff by the provisions of the Connecticut Unfair Trade Practices Act, including costs and punitive damages, under which this complaint is brought.