UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BROADWAY THEATRE CORP. | ) | |
| | ) | |
| | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO: 3:00-CV-00706 (SRU) |
| | ) | |
| | ) | |
| BUENA VISTA PICTURES | ) | |
| DISTRIBUTION, COLUMBIA | ) | |
| PICTURES INDUSTRIES, INC., | ) | |
| DREAMWORKS DISTRIBUTION L.L.C., | ) | |
| LIONS GATE FILMS INC., | ) | |
| METRO-GOLDWYN-MAYER | ) | |
| DISTRIBUTION CO., MIRAMAX FILM | ) | |
| CORP., NEW LINE CINEMA | ) | |
| CORPORATION, PARAMOUNT | ) | |
| PICTURES CORPORATION, SONY | ) | |
| PICTURES RELEASING | ) | |
| CORPORATION, UNIVERSAL FILM | ) | |
| EXCHANGES, INC., WARNER BROS. | ) | |
| DISTRIBUTING, AND USA FILMS, LLC | ) | |
| | ) | MARCH 29, 2004 |

**DEFENDANT LIONS GATE FILMS INC.'S MOTION FOR LEAVE TO FILE
MOTION IN LIMINE AND MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ANY
ALLEGEDLY UNFAIR OR DECEPTIVE BUSINESS PRACTICES RELATING TO
DEFENDANT LIONS GATE FILMS INC.**

Defendant LIONS GATE FILMS INC. ("Lions Gate") respectfully requests the entry of

an order granting Lions Gate leave to file the instant Motion in Limine and granting the instant

Motion in Limine to preclude plaintiff Broadway Theatre Corp. ("Plaintiff") from offering at

**ORAL ARGUMENT REQUESTED**

trial any arguments, testimony or other evidence of allegedly unfair methods of competition or

unfair or deceptive acts or practices in the conduct of trade or commerce purportedly engaged in

by Lions Gate. Any such arguments, testimony and/or other evidence would be premised on

legally erroneous concepts of liability and/or would be legally irrelevant, for the reasons set forth

in the Memorandum of Law and the Declarations of Tom Ortenberg and Richard W. Bowerman

submitted concurrently herewith.

LIONS GATE FILMS INC.

By _____

Richard W. Bowerman (ct 04181)
Ben A. Solnit (ct00292)
Elizabeth K. Andrews (ct20986)
Tyler Cooper & Alcorn, LLP
205 Church Street
Post Office Box 1936
New Haven, Connecticut 06509

(203) 784-8200
(203) 777-1181 (fax)
e-mail: bowerman@tylercooper.com
        solnit@tylercooper.com
        eandrews@tylercooper.com

Of Counsel:

SAUL D. BRENNER
Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, California 90067

(310) 282-2000
(310) 282-2200 (fax)
e-mail: sbrenner@loeb.com

- Their Attorneys –

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served via first-class

mail on March 29, 2004 to the following:

Peter C. Spodick, Esquire
592 Central Avenue
New Haven, Connecticut 06515

Richard W. Bowerman (ct 04181)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BROADWAY THEATRE CORP. | ) | |
| | ) | |
| | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO: 3:00-CV-00706 (SRU) |
| | ) | |
| | ) | |
| | ) | |
| BUENA VISTA PICTURES | ) | |
| DISTRIBUTION, COLUMBIA | ) | |
| PICTURES INDUSTRIES, INC., | ) | |
| DREAMWORKS DISTRIBUTION L.L.C., | ) | |
| LIONS GATE FILMS INC., | ) | |
| METRO-GOLDWYN-MAYER | ) | |
| DISTRIBUTION CO., MIRAMAX FILM | ) | |
| CORP., NEW LINE CINEMA | ) | |
| CORPORATION, PARAMOUNT | ) | MARCH 29, 2004 |
| PICTURES CORPORATION, SONY | ) | |
| PICTURES RELEASING | ) | |
| CORPORATION, UNIVERSAL FILM | ) | |
| EXCHANGES, INC., WARNER BROS. | ) | |
| DISTRIBUTING, AND USA FILMS, LLC | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIONS GATE FILMS INC.'S MOTION FOR LEAVE TO FILE MOTION IN LIMINE AND MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ANY ALLEGEDLY UNFAIR OR DECEPTIVE BUSINESS PRACTICES RELATING TO DEFENDANT LIONS GATE FILMS INC.**

## I.    INTRODUCTION

Defendant LIONS GATE FILMS INC. ("Lions Gate") respectfully requests the entry of an order granting Lions Gate leave to file a motion in limine and granting Lions Gate's motion in limine to preclude plaintiff Broadway Theatres Corp. ("Plaintiff") from offering at trial any arguments, testimony or other evidence that Lions Gate allegedly engaged in unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Such arguments, testimony and/or other evidence should be precluded because they would be premised on legally erroneous concepts of liability and/or would be legally irrelevant, on the grounds, *inter alia*, that Plaintiff has failed to produce any evidence that Lions Gate refused to license motion pictures to the York Square Cinemas, whether on a first-run basis or otherwise. Rather, the undisputed and overwhelming evidence exchanged in discovery in this case demonstrates conclusively that Lions Gate has not refused to license motion pictures to Plaintiff as a result of any clearances over the York Square, and in fact has licensed a considerable number of its films for first-run exhibition by the York Square. Indeed, Plaintiff's own president admitted under oath that Lions Gate licensed a substantial number of motion pictures to the York Square Cinemas on a first-run basis, and did so over a long period of time. Because the undisputed evidence conclusively establishes that Plaintiff cannot prove that Lions Gate engaged in the type of activity alleged in its Complaint, any attempt on the part of Plaintiff to demonstrate that any conduct of Lions Gate somehow amounted to an unfair method of competition or unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of CUTPA, would be premised on legally erroneous concepts, be legally irrelevant, or both. Accordingly, and in the interests of justice and

2

judicial economy, Plaintiff should be precluded from presenting any arguments, testimony or other evidence for the purpose of seeking to prove that Lions Gate engaged in any conduct in violation of CUTPA.

## II.    PERTINENT FACTUAL BACKGROUND

Lions Gate is an independent entertainment company whose business includes the production and distribution of motion pictures. The films that Lions Gate has released and distributed theatrically in recent years include such acclaimed motion pictures as *Gods and Monsters*, *The Red Violin*, *Monster's Ball*, *Amores Perros*, *Shattered Glass*, and *The Cooler*. Declaration of Tom Ortenberg ("Ortenberg Decl.") ¶ 3.

Contrary to the conclusory allegations that Plaintiff advances in its Complaint, Lions Gate has not granted clearances over the York Square and has not refused to license motion pictures to the York Square, whether on a first-run basis or otherwise. Ortenberg Decl. ¶¶ 5-8. Since 1997, Lions Gate has licensed at least twenty-five (25) of its motion pictures to Plaintiff for exhibition at the York Square. *Id.* ¶ 5. The films that have been exhibited at the York Square during this time period include many of Lions Gate's most popular, acclaimed and valuable properties, among them *Gods and Monsters*, *The Red Violin*, *Monster's Ball*, *Amores Perros* and *Shattered Glass*. *Id.*

Moreover, far from refusing to license its motion pictures to the York Square on a first-run basis, since 1997, Lions Gate has licensed to Plaintiff at least eighteen (18) films for exhibition at the York Square **on a first-run basis**, including such pictures as *The Red Violin*,

3

*Amores Perros, The Golden Bowl, Lantana, Lovely and Amazing, Irreversible* and *Shattered Glass*.[1]  Ortenberg Decl. ¶ 6.

Further, as recently as January 2004, Lions Gate was prepared to license to Plaintiff – **on a first-run basis** – one of Lions Gate's most acclaimed and sought-after motion pictures: the Academy Award-nominated recent release entitled *The Cooler* (starring William H. Macy and Alec Baldwin). Ortenberg Decl. ¶ 7. Ironically, this anticipated first-run exhibition at the York Square was cancelled when **Plaintiff** – not Lions Gate – reneged on its commitment to exhibit *The Cooler* just four days before the theatrical run was scheduled to begin. *Id.* Plaintiff's stated excuse for refusing to honor its agreement to exhibit *The Cooler* was that the York Square was then exhibiting a movie entitled *Cheaper by the Dozen* (distributed by 20th Century Fox) and wanted to hold this movie over for an extra week rather than fulfilling its commitment to Lions Gate. *Id.*

Far from presenting a contrary version of events, moreover, Plaintiff's own president confirmed under oath that Lions Gate licensed a large number of motion pictures to the York Square Cinemas on a first-run basis over a period of time dating back to several years before Plaintiff filed its Complaint. Plaintiff's president, Robert Spodick, testified at his deposition that, since approximately the mid-1990s, Lions Gate (or its predecessor company) licensed a majority of its motion pictures to Plaintiff on a first-run basis, and in fact, Plaintiff was the sole exhibitor in the New Haven metropolitan area for most of Lions Gate's films. *See* Exhibit 1 to Declaration

---

[1]  The entire list of films that the York Square has exhibited on a first-run basis since 1997 includes *The Daytrippers, The Pillow Book, Love and Death on Long Island, Mr. Jealousy, Buffalo 66, The Red Violin, The Dinner Game, Jesus' Son, But I'm A Cheerleader, Love & Sex, Two Family House, Widow of St. Pierre, Amores Perros, Golden Bowl, Lantana, Lovely and Amazing, Irreversible,* and *Shattered Glass*. Ortenberg Decl. ¶ 6. In the case of the film entitled *The Golden Bowl,* Lions Gate's records indicate that this picture was exhibited on a first-run basis simultaneously at the York Square Cinemas and at another theatre in the New Haven metropolitan area. *See id.* ¶ 8.

of Richard W. Bowerman filed in support hereof (pertinent excerpts of transcript of Spodick deposition). Mr. Spodick also testified that Plaintiff's animus against Lions Gate resulted not from any consistent practice on the part of Lions Gate of refusing to license its films to the York Square on a first-run basis, but rather, from Lions Gate's decision in a single instance to depart from its usual practice of licensing films to the York Square by licensing the right to exhibit *American Psycho*, a motion picture that Plaintiff wanted, on a first-run basis to another theatre in the New Haven area. *See id.* (Spodick testimony concerning fact that Plaintiff had become upset when Lions Gate decided not to offer *American Psycho* to York Square on first-run basis).

## III.    ARGUMENT

When this Court denied the joint motion for summary judgment filed by the various defendants in this action, the Court assumed that Plaintiff would produce evidence sufficient to create a triable issue concerning its claim that each of the named defendants had granted clearances over the York Square Cinemas in New Haven, Connecticut. *See Broadway Theatres Corp. v. Buena Vista Pictures Distribution, et al.,* Civ. Action No. 3:00-CV-00706 (SRU), Ruling on Defendants' Motion for Summary Judgment (Sept. 19, 2002), at p. 4. Without deciding whether each defendant in fact had granted or was granting clearances over the York Square Cinemas (as well as a number of other factual issues), the Court expressed its legal opinion that the practice of granting clearances might support a cause of action under CUTPA under certain circumstances. *Id.* at 5-8. The point is completely academic in the case of Lions Gate, however, because Plaintiff has not produced and cannot produce any evidence to support any claim that Lions Gate had a practice of refusing to license its cinematic product to Plaintiff on a first-run basis.

5

Indeed, notwithstanding the conclusory assertions of Plaintiff's Complaint, Plaintiff has failed to produce any evidence – and no evidence exists – to support its CUTPA claim against Lions Gate. The undisputed and indisputable evidence demonstrates that Lions Gate has licensed a significant number of its motion pictures, including many of its most valuable properties, to Plaintiff for first-run exhibition at the York Square. As set forth in the Declaration of Tom Ortenberg (President, Lions Gate Film Releasing), Lions Gate – far from categorically refusing to license motion pictures to the York Square Cinemas on a first-run basis or granting any clearance over the York Square – has licensed numerous motion pictures to the York Square for exhibition, both on a first-run basis and otherwise. Ortenberg Decl. ¶¶ 5-8. Moreover, far from presenting a contrary version of events, Plaintiff's own president, Robert Spodick, confirmed under oath that Lions Gate has a long record, dating back to in or around the mid-1990s, of licensing a substantial number of motion pictures on a first-run basis to the York Square.

Further, there is substantial additional evidence that is simply inconsistent with any claim that Lions Gate engaged in any pattern of conduct or business practice that could support a claim under CUTPA. This evidence includes the admission under oath of Plaintiff's representative that Plaintiff was upset with Lions Gate not because Lions Gate refused to license **any** of its pictures to the York Square for first-run exhibition, but because Lions Gate made a rational, independent business decision not to license **all** of its films to the York Square on a first-run basis. Similarly, the evidence that Lions Gate recently made the business decision to license *The Cooler* on a first-run basis to the York Square – only to have this plan frustrated when **Plaintiff**, citing its desire to hold over a 20th Century Fox movie that it was then showing for an extra week, reneged on its

6

commitment to exhibit this valuable property only a matter of days before its anticipated first-run exhibition of *The Cooler* was to begin -- is simply incompatible with any contention that Lions Gate has refused to license product to the York Square as a result of any clearance over the York Square. Ortenberg Decl. ¶ 7.

The overwhelming evidence that Lions Gate has not engaged in any business practice involving either a refusal to license its motion pictures on a first-run basis to the York Square Cinemas or any clearance over the York Square Cinemas compels the conclusion that any arguments, testimony and/or evidence that Plaintiff may seek to present at trial for the purposes of demonstrating that Lions Gate somehow violated CUTPA should be excluded as legally erroneous and/or irrelevant. *See Applera Corp. v. MJ Research Inc.*, 2004 U.S. Dist. LEXIS 2900, *14-15 (D. Conn., Feb. 24, 2004) (Arterton, J.) (granting motion in limine to preclude arguments, testimony or other evidence concerning issues of liability based on legally erroneous theories); *Applera Corp., et al. v. MJ Research Inc., et al.*, 2004 U.S. Dist. LEXIS 1560, *7-8 (D. Conn., Feb. 24, 2004) (granting motion in limine to preclude arguments, testimony or other evidence relating to issues of liability based on legally irrelevant concepts). As a matter of law, Lions Gate's independent business decisions to license or not to license films to the York Square on a case-by-case basis cannot support liability under CUTPA. Similarly, Plaintiff's anger or disappointment at having been denied a first-run license to exhibit one or more specific motion pictures as a result of an independent business decisions made by Lions Gate, is far removed from the type of harm that CUTPA was designed to prevent.

Further, the undisputed evidence in the record concerning Lions Gate's licensing practices vis-à-vis the York Square, and the testimony of Plaintiff's representative concerning

7

Plaintiff's real objections to the commercial behavior of Lions Gate, give rise to the concern that, unless precluded from doing so by order of this Court, Plaintiff could seek to present arguments or introduce evidence to the effect that Lions Gate should be found liable under CUTPA simply for exercising its independent business judgment to decline in certain cases to license specific motion pictures on a first-run basis to the York Square. In view of the overwhelming evidence that Lions Gate did not, as a result of any clearance over the York Square, refuse to license its motion pictures on a first-run basis to Plaintiff, any evidence or arguments that Plaintiff may seek to introduce for purposes of demonstrating that Lions Gate engaged in any unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce would be either legally erroneous, legally irrelevant, or both, and should be precluded on either or both grounds. *See, e.g., Applera Corp.*, 2004 U.S. Dist. LEXIS 2900, at *14-15; *Applera Corp.*, 2004 U.S. Dist. LEXIS 1560, at *7-8. Moreover, permitting Plaintiff to present evidence of purported liability on the part of Lions Gate would run contrary to the interests of judicial efficiency and economy.

In sum, because the evidence clearly establishes that there is no pattern or practice involving Lions Gate that could support a finding of liability under CUTPA, and the undisputed evidence is simply incompatible with a valid claim under CUTPA, Plaintiff should be precluded from presenting any arguments, testimony or evidence concerning Lions Gate's licensing of motion pictures in the New Haven area.

8

## IV.   CONCLUSION

Accordingly, Lions Gate respectfully submits that Lions Gate should be granted to leave
file its motion in limine and the motion should be granted.

LIONS GATE FILMS INC.

By _____

Richard W. Bowerman (ct 04181)
Ben A. Solnit (ct00292)
Elizabeth K. Andrews (ct20986)
Tyler Cooper & Alcorn, LLP
205 Church Street
Post Office Box 1936
New Haven, Connecticut 06509

(203) 784-8200
(203) 777-1181 (fax)
e-mail: bowerman@tylercooper.com
         solnit@tylercooper.com
         eandrews@tylercooper.com

Of Counsel:

SAUL D. BRENNER
Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, California 90067

(310) 282-2000
(310) 282-2200 (fax)
e-mail: sbrenner@loeb.com

- Their Attorneys –

9

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served via first-class

mail on March 29, 2004 to the following:

Peter C. Spodick, Esquire
592 Central Avenue
New Haven, Connecticut 06515

Richard W. Bowerman (ct 04181)

10

# Tab A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BROADWAY THEATRE CORP.      )
     )
     )
     )
V.      )   CIVIL ACTION NO: 300-CV-00706 (SRU)
     )
     )
     )
BUENA VISTA PICTURES      )   **DECLARATION OF TOM**
DISTRIBUTION. COLUMBIA      )   **ORTENBERG IN SUPPORT OF LIONS**
PICTURES INDUSTRIES, INC.,      )   **GATE FILMS INC.'S MOTION IN**
DREAMWORKS DISTRIBUTION      )   **LIMINE**
L.L.C., LIONS GATE FILMS INC.,      )
METRO-GOLDWYN-MAYER      )
DISTRIBUTION CO., MIRAMAX FILM    )
CORP., NEW LINE CINEMA      )
CORPORATION, PARAMOUNT      )
PICTURES CORPORATION, SONY      )
PICTURES RELEASING      )
CORPORATION, UNIVERSAL FILM      )
EXCHANGES, INC., WARNER BROS.      )
DISTRIBUTING. AND USA FILMS,      )   MARCH $\underline{29}$, 2004
LLC

## DECLARATION OF TOM ORTENBERG

I, Tom Ortenberg, hereby declare as follows:

1.  I make this declaration based on my personal knowledge and review of company records, in support of the motion in limine filed by Lions Gate Films Inc. ("Lions Gate").

### Job Title and Responsibilities

2.  I am the President of Film Releasing at Lions Gate. In this position, my duties include participating in the creation of a distribution plan for each motion picture distributed by Lions Gate, determining which theatres in each market should be targeted for licensing, and negotiating licenses with motion picture exhibitors. In connection with these responsibilities, I review box office grosses for theatres in the Eastern Division to determine performance and the desirability of each theatre for various genres of film and in various release patterns.

### Lions Gate – An Overview

3.  Lions Gate is an independent entertainment company whose business includes the production and distribution of motion pictures. The films that Lions Gate has released and distributed theatrically in recent years include such acclaimed motion pictures as *Gods and Monsters*, *The Red Violin*, *Monster's Ball*, *Amores Perros*, *Shattered Glass*, and *The Cooler*.

**Lions Gate's Distribution of Motion Pictures in the New Haven Metropolitan Area**

4.        Contrary to the plaintiff's claims in this lawsuit that Lions Gate has refused to
license motion pictures on a first-run basis to the York Square Cinemas in
downtown New Haven, Connecticut, Lions Gate, throughout the period from 1997
to the present, has licensed to the York Square Cinema, both on a first-run basis
and otherwise, a great many of the motion pictures that it has distributed
theatrically in the New Haven metropolitan area, including many of Lions Gate's
most valuable and acclaimed properties.

5.        The specific motion pictures that Lions Gate has licensed to the York Square
Cinemas during the period from January 1, 1997[1] through the present include the
following: *The Daytrippers*, which began playing at the York Square on April 18,
1997; *The Pillow Book*, which began playing at the York Square on June 20,
1997; *Love and Death on Long Island*, which began playing at the York Square on
March 13, 1998; *Mr. Jealousy*, which began playing at the York Square on June
12, 1998; *Buffalo 66*, which began playing at the York Square on June 26, 1998;
*Gods and Monsters*, which began playing at the York Square on November 20,
1998; *Affliction*, which began playing at the York Square on March 12, 1999; *The
Red Violin*, which began playing at the York Square on June 25, 1999; *The Dinner
Game*, which began playing at the York Square on July 30, 1999; *American
Psycho*, which began playing at the York Square on June 9, 2000; *The Big
Kahuna*, which began playing at the York Square on June 23, 2000; *Jesus' Son*,

---

[1]        The listed films that were released in 1997 were distributed by Cinepix Films, which was

3

which began playing at the York Square on July 7, 2000; *But I'm A Cheerleader*, which began playing at the York Square on July 21, 2000; *Love & Sex*, which began playing at the York Square on September 8, 2000: *Two Family House*, which began playing at the York Square on November 10, 2000; *Widow of St. Pierre*, which began playing at the York Square on March 16, 2001; *Shadow of the Vampire*, which began playing at the York Square on March 30, 2001; *Amores Perros*, which began playing at the York Square on April 13, 2001; *Golden Bowl*, which began playing at the York Square on May 11, 2001; *Lantana*, which began playing at the York Square on February 1, 2002; *Monster's Ball*, which began playing at the York Square on May 10, 2002; *Lovely and Amazing*, which began playing at the York Square on July 26, 2002; *Secretary*, which began playing at the York Square on or about November 22, 2002; *Irreversible*, which began playing at the York Square on March 21, 2003; and *Shattered Glass*, which began playing at the York Square on December 5, 2003.

6.    Of the pictures identified above that Lions Gate has licensed to the York Square Cinemas during the period from 1997 to the present, the following pictures were licensed to the York Square Cinemas **on a first-run basis**: *The Daytrippers, The Pillow Book, Love and Death on Long Island, Mr. Jealousy, Buffalo 66, The Red Violin. The Dinner Game. Jesus' Son, But I'm A Cheerleader, Love & Sex, Two Family House, Widow of St. Pierre, Amores Perros, Golden Bowl, Lantana, Lovely and Amazing, Irreversible,* and *Shattered Glass.*

the prior name of Lions Gate Films. The name was changed in or around January 1998.

4

7. In addition to the foregoing motion pictures that were exhibited by the York Square Cinemas on a first-run basis, Lions Gate has offered to license other pictures to the York Square Cinemas on a first-run basis. Earlier this year, for example, Lions Gate offered and agreed to license one of its most valuable properties – the acclaimed, Academy Award- nominated motion picture entitled *The Cooler* (starring William H. Macy and Alec Baldwin) – to the York Square on a first-run basis beginning on Friday, January 16, 2004. After entering into an agreement with Lions Gate to exhibit *The Cooler* at the York Square Cinemas beginning on January 16, 2004, the York Square Cinemas backed out of this agreement on January 12, 2004 – only four days before the theatrical run was set to begin – leaving Lions Gate in a very difficult position. The York Square said that it was reneging on its commitment to exhibit *The Cooler* because the York Square was then exhibiting a movie entitled *Cheaper by the Dozen* (distributed by 20th Century Fox) and wanted to hold this movie over for an extra week rather than honoring its deal with Lions Gate.

8. To the extent that there have been certain films that Lions Gate licensed on a first-run basis to exhibitors in the New Haven area other than the York Square Cinemas during the above-referenced time period, these licensing decisions did not result from any clearance over the York Square Cinema. Just as Lions Gate has made a business decision to license or offer to license certain pictures to the York Square Cinemas on a first-run basis, the decisions to license certain other films to other exhibitors in the New Haven area on a first-run basis were made based upon Lions

5

Gate's business judgment that the first-run exhibition of the subject motion

pictures in theatres other than the York Square Cinemas would result in greater

box office revenues, and thus greater license fees received by Lions Gate, than

would be generated by a first-run release at the York Square or a simultaneous

(known as "day and date"), first-run exhibition at both another theatre and the

York Square (although Lions Gate's records show that there was at least one

instance (in the case of the film entitled *Golden Bowl*) in which a Lions Gate film

played "day and date" at the York Square and another theatre in the New Haven

area). In all cases, Lions Gate licenses its motion pictures to exhibitors in the

New Haven metropolitan area – be they the York Square, the Showcase Orange,

the Showcase North Haven or other theaters – based solely on its independent

business judgment about the exhibition that is likely to result in a maximization of

the overall film rentals to Lions Gate for each motion picture. Lions Gate simply

chooses the best theatre for each film on a film-by-film basis. In the case of the

New Haven market, it has generally been Lions Gate's judgment that its pictures,

which often have tended to be specialized films that would have appeal beyond

the typical audience of an "art house" theatre, only warranted a single run in the

New Haven area at any particular time.

/////

/////

/////

6

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Santa Monica, California this 26 day of March 2004.

Tom Ortenberg

7