## AFFIDAVIT

Peter C. Spodick, being duly sworn, deposes and says:

1. I am over eighteen years of age and believe in the obligation of an oath.

2. I was counsel for the plaintiff in the case of <u>Broadway Theatre Corp. v. Buena Vista Pictures Distribution</u>, et al, Civil Action no. 300-CV-00706 (SRU), United States District Court, District of Connecticut

3. I am also the son of Robert Spodick, President and CEO of the plaintiff Broadway Theater Corp., (Broadway), who is 85 years old and in what I perceive to be, poor health.

4. I am also the manager and operator of the York Square Theatre owned by Broadway.

5. Presently, and for the past several years, I have worked at the York Square Theatre an average of 70 to 80 hours per week at a salary that is equal to the hourly minimium wage.

6. I do this because it is the only way to keep the York Square Theatre open, due to the fact that the theatre does not make enough money to hire more than a few part time empoyees.

7. I am not an officer, and never have been, and have never owned any stock in Broadway.

8. Because I am also an attorney licensed to practice law in the State of Coinnecticut and the United States District Court for the District of Connecticut, and because Broadway had insufficient funds to otherwise retain counsel, I brought the above entitlled action in the hope that the defendants would make some reasonable compromise to permit Broadway to continue in business, as it was obvious that their policy of not allowing the York Square Theatre to play new movies even though the York Square is not in substantial competition with suburban theatres outside the City of New Haven, was, and still is, economically strangling the York Square.

9. Soon after bringing this action, it became apparent that the defendants were not interested in any kind of settlement whatsoever, <u>even one that would cost them nothing</u>, but would merely allow the York Square access to film.

10. Such a proposal was presented to this court in Broadway's Rule 26(f) statement requesting alternate dispute resolution.

11. Soon after this action was brought, it became quite apparrent that the defendants would rather spend millions of dollars to economically strangle the York Square than to offer any settlement whatsoever.

12. The handling of this litigation, together with my duties as manager of the York Square, which require me to work 70 to 80 hours per week in the theatre, has placed a tremendous emotional strain on me.

13. In addition to this, the fact that my father, who is the plaintiff's chief witness in this case, is 85 years of age and has health concerns also placed emotional strain on me to such a degree that my duties as counsel to Broadway in this case conflicted with what I perceived to be my family obligation to protect the health of my father.

14. On May 10, 2004, when this case was scheduled to commence trial, my father had just been released from the hospital 12 days earlier on April 28, 2004, where he was being treated for a bronchial infection and a spot on his lung.

15. In addtion, I had hardly seen him since his release from the hospital, due to the fact that his business partner of 60 years, Leonard Sampson, part owner of Broadway was in the hospital dying and he was very distraught over this and was spending most of his time at the hospital visiting Mr. Sampson.

16. In fact, Mr. Sampson died approximately a week after the May 10th court appearance.

17. In addition, I was concerned that my father during the course of this litigation had been compelled to undergo three full days of deposition testimony by the defendants.

18. When I saw my father walk into the courtroom on May 10, 2004, he appeared to be weak, tired, distraught and in truly poor health and I had grave concerns about his having to testify that day, and undergo a grueling cross examination by the defendants, which I feared would last several days.

19. In fact, I feared, based on his deposition experience, that he was in no condition to undergo such testimony.

20. My greatest fear was that if anything happened to him, I would always blame myself.

21. I did not consult my father when I made the decision to withdraw the case to spare him from what I perceived to be a grueling experience that could well be fatal to him, because I know that he would have chosen to go forward with the trial.

22. In fact, my father is hard of hearing and did not immediately understand that the case had been dismissed, but only that it had been withdrawn from trial status.

23. He immediately protested my unilateral decision to withdraw the case and wrote a letter and sent it to the presiding judge in the case.

24. Due to the above stated emotional family crisis existing on May 10, 2004, I improperly allowed what I perceived to be my family obligations to interfere with my duties as counsel.

25. I recognize and appreciate that as counsel for Broadway, I had no right to withdraw the action without consulting with my client and receiving its authorization to do so.

Dated at New Haven, CT this 11th day of August, 2004

_____
Peter C. Spodick

Subscribed and sworn to this 11th day of August, 2004, before me.

_____
Commissioner of the Superior Court
~~Notary Public~~

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed to each of the following counsel of record on August 12, 2004:

>RICHARD W. BOWERMAN, Esq.;
>Tyler, Cooper & Alcorn, LLP
>205 Church Street
>New Haven, CT 06509
>
>JEFFREY A. ROSEN, Esq.
>Sargoy, Stein, Rosen & Shapiro
>1790 Broadway
>New York, NY 10019

_____
MAX F. BRUNSWICK