UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BROADWAY THEATRE CORP. | ) | |
| | ) | |
| | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO: 3:00-CV-00706 (SRU) |
| | ) | |
| | ) | |
| | ) | |
| BUENA VISTA PICTURES | ) | |
| DISTRIBUTION, ET AL. | ) | OCTOBER 18, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO VACATE**

## I.    INTRODUCTION

On the day the trial of this case was to begin, Plaintiff voluntarily dismissed it with prejudice.

The dismissal was requested by Plaintiff's counsel in open court while an officer and owner of the

Plaintiff stood next to him at counsel table, unprotesting.  Three months later, Plaintiff hired new

counsel to claim that the dismissal was either a mistake or the product of extraordinary

circumstances and should be vacated. This claim is supported by neither the facts nor the law.  It

should therefore be rejected.

**ARGUMENT IS REQUESTED**



## II.    FACTS

Plaintiff Broadway Theatre Corp. ("Broadway") is a Connecticut corporation formed in 1970 for the purpose of constructing and operating a movie theatre in New Haven called the York Square Cinema. Defendants' Proposed Findings of Fact ("D. Fact") 1.[1]  Robert Spodick owns 25% of the shares of Broadway. D. Fact 2. Robert Spodick is also the owner of Peter-Michael, Inc., which operated the Cheshire Cinema in the 1980's and 1990's. D. Facts 4, 5. Peter Spodick has been a lawyer for over twenty-five years, and has been in business with his father, Robert, for over twenty years, managing first the Cheshire Theatre and then the York Square Theatre. D. Facts 3, 4, 8. In running their businesses, Robert and Peter Spodick have regularly dealt with lawyers, including Max Brunswick, who over the years has intermittently consulted with Attorney Spodick about this lawsuit. D. Facts 5, 6, 7. Attorney Charles Francis, Peter Spodick's law school classmate and a long-time friend of the Spodick family, was also consulted about this lawsuit and trial and accompanied the Spodicks to court on May 10, 2004. D. Fact 9.

On December 9, 2003, a trial date of Monday, May 10, 2004 was agreed to by the parties and ordered by the Court. D. Fact 13. A pretrial conference was held on Thursday, May 6, 2004. Peter Spodick appeared for Plaintiff. Plaintiff's witness list was discussed, and Attorney Spodick stated that Robert Spodick would be Plaintiff's first witness. D. Facts 16, 17. Attorney Spodick said that although Robert Spodick had a hearing disability, there was no difficulty with Robert Spodick's comprehension. D. Fact 17. When he went on to say that Robert Spodick might require a protective order or other understanding, the Court urged the parties to submit deposition testimony or affidavits in lieu of live testimony. Attorney Spodick did not raise any other concerns about Robert Spodick's current state of health. D. Fact 17. Indeed, although Robert Spodick had

---

[1]    Defendants' Proposed Findings of Fact, which contains the evidentiary support for each fact, is attached as Exhibit A.

been admitted to Milford Hospital in late April 2004, with a suspicion of pneumonia, he was found not to have pneumonia, was discharged a day later, and resumed his normal activities within a week. D. Fact 15. Prior to the morning of Monday, May 10, 2004, Peter Spodick had not seen Robert Spodick since before that hospitalization and had done nothing since the May 6th pretrial conference to prepare Robert Spodick as a witness. D. Fact 19. Attempts by defense counsel prior to May 10, 2004 to exchange exhibit lists and designations of Robert Spodick's deposition for use at trial were unsuccessful. D. Facts 18, 20, 22.

On May 10, 2004, Attorney Spodick drove to court with Attorney Francis. D. Fact 23. Attorney Spodick anticipated that Robert Spodick would not be ready to be an appropriate witness. Id. While on their way to court, Attorneys Spodick and Francis discussed withdrawing the case. D. Fact 24. They met Robert Spodick in the hall outside Judge Underhill's courtroom and Attorney Spodick told Robert Spodick that the case should be withdrawn. There followed a brief conversation and Attorney Francis agreed that withdrawing the case was the right thing to do. D. Fact 25. Robert Spodick then accompanied Attorney Spodick and Attorney Francis into the courtroom knowing that Attorney Spodick intended to withdraw the case. D. Facts 25, 26. Once in the courtroom, before Attorney Spodick addressed the Court, Robert Spodick told him: "Do what you must." D. Fact 27; see also Declarations of Richard W. Bowerman ("Bowerman Dec.") (Exhibit 1), Vicki R. Solmon (Exhibit 2), Constance Minnett (Exhibit 3), Andrew Chang (Exhibit 4) and Jeffrey Rosen (Exhibit 5) filed herewith  Robert Spodick stood next to Attorney Spodick and heard him voluntarily withdraw the case with prejudice. D. Fact 28. He did not protest or object in any way while this was done. D. Facts 28, 29.

On May 14, 2004, Robert Spodick wrote a letter to the Court, stating that he was "stunned" when Attorney Spodick "told me at the door to the Court that he could not carry on with the case.

3

A brief conversation was unavailing .... Peter stood before you and withdrew. At his side, I stood speechless." D. Fact 31. In fact, this silence extended through Attorney Spodick's motion, the Court's confirming that the case was being dismissed with prejudice, and the Court's statement that the case was over. D. Fact 29.

## III. ARGUMENT

Rule 60 of the Federal Rules of Civil Procedure defines very specific, limited circumstances under which a district court may grant a motion for relief from a final judgment. The Plaintiff seeks relief under subpart b of the Rule, which sets forth six possible bases for such relief:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud...misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.Pro. 60(b).

Paragraph 4 of Plaintiff's Motion to Vacate and Set Aside Voluntary Dismissal and to Relieve Plaintiff from Final Judgment Order ("Motion to Vacate"), states that "[u]nder all of the circumstances then and there existing at the time of the voluntary dismissal, the court should vacate such dismissal and relieve the plaintiff from the final judgment order on the ground of mistake, inadvertence, surprise, excusable neglect or other reasonable ground justifying relief from the operation of the judgment." Based upon this Paragraph, it appears that Plaintiff is relying on subparts (b)(1) and (b)(6) of Rule 60. Plaintiff's Motion is without merit under either section.

It is the rule in this Circuit that "[a] motion for relief from judgment is generally not favored ...." U.S. v. Int'l Broth. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). Moreover, "[s]ince 60(b)

allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). "It has long been established in the Second Circuit that the district court maintains discretion over whether or not to grant relief under Rule 60(b)." Youmans v. Highmark Ins. Co., 2004 WL 1638238 at *4 (D. Conn.) (Underhill, J.) (copy attached as Exhibit 6). Under the facts and circumstances of this case, Plaintiff has shown no mistake, inadvertence, surprise, or excusable neglect in the entry of the final judgment of dismissal, with prejudice, nor has it shown any other exceptional circumstances that would justify granting its motion.

A.    **There was no mistake, inadvertence, surprise or excusable neglect within the meaning of Rule 60(b)(1).**

Plaintiff, through its chosen counsel, voluntarily dismissed this case with prejudice. In Nemaizer, as here, the plaintiff voluntarily dismissed an action with prejudice and then sought relief under Rule 60(b)(1), arguing it had not understood the effect of such a dismissal. Although the district court granted the motion, the Second Circuit reversed, holding:

> [W]e have consistently declined to relieve a client under subsection (1) of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload.

Nemaizer, 793 F.2d at 62 (internal quotation marks and citations omitted). The Nemaizer court reasoned that "[t]his is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions." Id. "[A]n attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary." Id. at 62-63. Moreover, "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." Id. at 62 (citing United States v. O'Neil, 709 F.2d 361, 374 (5th Cir.

5

1983)(upholding the district court's denial of Rule 60(b) relief despite the finding of a good faith mistake based upon "want of adequate care or ignorance of the rules."). Additionally, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise, or excusable neglect necessary to justify Rule 60(b)(1) relief." Id. "[F]ailure to understand the effects of a dismissal is [also] an insufficient ground under Rule 60(b), see PRC Harris v. Boeing Co., 700 F.2d 894, 857 (2d Cir. 1983) ...." Cobos v. Adelphi University, 179 F.R.D. 381, 387 (E.D.N.Y. 1998).

The facts of the instant case provide no support for relief under the standards of Rule 60(b)(1) for several reasons.

First, Plaintiff cannot avoid the consequences of Attorney Peter Spodick's acts or omissions. Plaintiff hired Peter Spodick as its chosen trial counsel.[2] Plaintiff hired Peter Spodick with the knowledge that Attorney Spodick was also responsible for the day-to-day operations of the York Square Theatre which required him to spend 70 to 80 hours a week managing the theatre. See D. Fact 8. Because a lawyer's difficulty in managing his caseload is not grounds for relief under Rule 60, Plaintiff cannot now claim that Peter Spodick's concurrent management of the York Square or lack of trial experience justifies relief from the voluntary dismissal of this case.

Second, in the context of this case, Attorney Peter Spodick's action in voluntarily dismissing his client's case with prejudice, "whether arising from neglect, carelessness or inexperience," was an intentional act that is fully attributable to his client. On May 10, 2004, Robert Spodick, an officer and owner of Broadway Theatre Corp., stood before this Court, by his counsel's side, as

---

[2] While Robert Spodick states in ¶6 of his Affidavit that "[a]fter consulting with several attorneys, it was determined that the economic condition of Broadway was such that there was not sufficient funds to retain counsel based on the retainers requested by the attorneys consulted," it is not entirely clear why, more than four years after the suit was commenced, Plaintiff could afford to hire Attorney Brunswick once again to represent one of Robert Spodick's corporate interests. In any event, the testimony makes clear that Robert Spodick is an experienced businessman who knows how to – and did – obtain access to legal counsel whenever needed.

counsel informed the Court that he wished to withdraw the case. D. Facts 28, 29. Prior to entering the courtroom on May 10th, Peter Spodick, together with Charles Francis, also an attorney, and a family friend, told Robert Spodick that Peter intended to withdraw the case. See D. Facts 25, 26. After Peter Spodick's clear explanation and Attorney Charles Francis' concurrence that it was the "right thing to do," Robert Spodick walked into the courtroom with his counsel and told Peter Spodick, "do what you must." D. Facts 25, 26, 27; Declarations of Richard W. Bowerman, Vicki R. Solmon, Constance Minnett, Andrew Chang and Jeffrey Rosen. Robert Spodick then stood by Peter Spodick's side while Attorney Spodick voluntarily withdrew the case with prejudice. Robert Spodick did not ask for a postponement of the trial, or any other remedy; he acquiesced in the dismissal, both by telling his lawyer "do what you must" and by standing silently by while the case was voluntarily dismissed. To the extent that Robert Spodick did not wish the case to be withdrawn, or did not authorize withdrawal of the case, Robert Spodick had an affirmative duty to protect his own interests by taking whatever steps were necessary at the time. Nemaizer, 793 F.2d at 62-63. Broadway Theatre, and Robert Spodick must now live with the consequences of chosen counsel's actions. "To rule otherwise would empty the finality of judgments rule of meaning." Nemaizer, 793 F.2d at 63.

Third, Robert Spodick's acquiescence in the dismissal also defeats Plaintiff's claim, raised for the first time three months after the fact, that Peter Spodick's action was unauthorized. Robert Spodick admitted in his May 14, 2004 letter to the Court that he knew ahead of time what his lawyer was going to do and that he was present, unprotesting, when the case was dismissed. Peter Spodick testified that he told Robert Spodick that he intended to withdraw the case, and that Attorney Charles Francis, who was aware of the substance of the claims being made, agreed with this action. See D. Facts 25, 26. A more authorized action is hard to imagine. The assertion that

7

Peter Spodick was not authorized to withdraw the case (before the Court in his father's presence) also flies in the face of: (a) Robert Spodick's admission that, as counsel, Peter Spodick always had authority to settle the case (D. Fact 21), and (b) the undisputed fact that Peter Spodick has been running the entire business of the York Square Theatre and prior to that the Cheshire Theatre, on his father's behalf for over 20 years (D. Facts 4, 8).

Fourth, the inconsistencies between the May 14th letter, the affidavits now submitted by Plaintiff, and the deposition testimony of Robert and Peter Spodick "are troubling and cast doubt upon [plaintiff's] credibility" in this regard. Carcello v. TJX Companies, Inc., 192 F.R.D. 61, 64 (D. Conn. 2000) (Rule 60(b)(1) motion denied when, inter alia, movant gave inconsistent explanations for failure to oppose a motion to dismiss). For instance:

- In Robert Spodick's Affidavit, he states that "[a]t no time did I have any prior knowledge of or authorize the voluntary dismissal." R. Spodick Aff. at ¶13. However, Robert Spodick's May 14 letter to the Court says no such thing. Instead, he admits that he was informed of Peter Spodick's intention "at the door to the Court" and that they discussed the matter prior to entering the courtroom ("a brief conversation was unavailing.") Peter Spodick in his deposition testified that he clearly told Robert Spodick on the morning of May 10th that he intended to withdraw the case and that Attorney Charles Francis also told Robert Spodick that that withdrawing the case was the right thing to do. See D. Facts 25, 26.

- Robert Spodick states in his Affidavit that "[w]hen the case was called, my son announced that he was voluntarily agreeing to a dismissal of the

case." R. Spodick Aff. at ¶10. This is a direct contradiction of Robert Spodick's claim that he did not understand that his attorney was withdrawing the <u>case</u>, but only understood that Peter Spodick was withdrawing as counsel. <u>See</u> R. Spodick Depo. of 9/10/04 at 75:7-76:1. (A copy of the cited portion of the deposition is attached as Exhibit 7).

- In Peter Spodick's Affidavit, he states that Robert Spodick "has health concerns," that twelve days prior to the commencement of trial, Robert Spodick was released from the hospital for treatment of "a bronchial infection and a spot on his lung," and that when "[Peter Spodick] saw [his] father walk into the courtroom on May 10, 2004, he appeared to be weak, tired, distraught and in truly poor health and [that Peter Spodick] had grave concerns about him having to testify that day." P. Spodick Aff. at ¶¶ 13,14, 18. In fact, Robert Spodick testified at his deposition that he was actually discharged from the hospital on April 28, 2004 with a clean bill of health, and that he felt "normal" by the end of that week. <u>See</u> D. Fact 15. More importantly, Robert Spodick testified that on the morning of May 10, 2004, he felt "[e]xcited," he was not distraught about being a witness, that he wasn't tired or weak and that he generally felt "fine." <u>See</u> D. Fact 25.

These major inconsistencies cast doubt on the credibility of Plaintiff's after-the-fact explanations and efforts to be relieved of its own voluntary acts. They should weigh heavily against granting the motion.

Finally, the clear fact that Plaintiff was unprepared to go forward with this case further undercuts the relief requested under Rule 60(b)(1). On Thursday, May 6, 2004, the parties appeared before Judge Underhill for a pretrial conference concerning what claims were being pressed at trial, what damages were being sought and what witnesses would be called. See D. Fact 16; Transcript of proceedings before Judge Underhill, May 6, 2004. At the conference Attorney Spodick stated that he would not be appearing as a witness, and therefore Defendants' pending motion in limine on that issue was moot. See id. Attorney Spodick further stated that his expert, Ronald Wanless, would not be testifying, and therefore Defendants' pending motion in limine on that issue was also moot. See id. Attorney Spodick further stated that Defendants' pending motion in limine concerning his damages expert, Michael Bailey, would have to be argued, although he conceded that Michael Bailey might not be able to testify about what would have been Plaintiff's receipts during the period of years within the statute of limitations. See id.

At the May 6, 2004 conference before Judge Underhill, Attorney Spodick informed the Court and the Defendants that Robert Spodick would be called as Plaintiff's first witness. See D. Fact 17; Transcript of proceedings before Judge Underhill, May 6, 2004. Attorney Spodick informed the Court that although Robert Spodick had a hearing disability, there is no difficulty with Robert Spodick's comprehension. See id. When Attorney Spodick stated that Robert Spodick may require something in the way of either "a protective order or understanding," the Court urged the parties to take deposition testimony and submit it in lieu of live testimony or submit direct testimony by affidavit. See id. However, Attorney Spodick testified at his deposition that prior to Monday morning, May 10, 2004, he had not seen Robert Spodick since before April 28, 2004, and at no time between the May 6th pretrial conference and Monday morning, May 10th, did Attorney Spodick do anything to prepare Robert Spodick as a witness. See D. Fact 19.

On Friday, May 7, 2004, the Defendants took the deposition of one of Plaintiff's proposed witnesses, Wayne David Heaton. See D. Fact 18; Bowerman Dec. ¶ 9. Attorney Peter Spodick was present during the deposition. See id. Following the deposition, Attorney Bowerman and Attorney Spodick discussed the exchange of exhibits and the exchange of highlighted portions of deposition testimony the parties intended to offer. See id. On Sunday, May 9, 2004, Attorney Spodick called Attorney Bowerman and stated that he would meet with Attorney Bowerman before the opening of court Monday morning and exchange exhibits. See D. Fact 20; Bowerman Dec. ¶ 13. Attorney Spodick further informed Attorney Bowerman that he would be faxing him written settlement offers directed to each Defendant later Sunday evening. See id. At 7:41 p.m. Sunday, May 9, 2004, Attorney Peter Spodick sent to Attorney Bowerman, from the home office of Attorney Sara V. Spodick, via facsimile, offers to settle the case. Each offer expired at 9:00 a.m. Monday, May 10, 2004. The offers were rejected. See D. Fact 21; Bowerman Dec.¶ 14. On Monday, May 10, 2004, when Attorney Bowerman met Attorney Spodick shortly after 9:00 a.m. outside Judge Underhill's courtroom to exchange exhibits, he was introduced to Attorney Francis by Attorney Spodick, who had nothing with him except a thin file folder. See D. Fact 22; Bowerman Dec. ¶ 15. When Attorney Bowerman asked Attorney Spodick if he was prepared to exchange exhibits, Attorney Spodick responded that he wanted to first speak with his father. See id.

Attorney Spodick testified at his deposition that on the morning of May 10, 2004, he drove to court with Attorney Francis. See D. Fact 23. Attorneys Spodick and Francis discussed Attorney Spodick's anticipation that Robert Spodick would not be ready to be an appropriate witness, as well as withdrawing the case. See D. Facts 23, 24. On May 10, 2004, when Robert Spodick got off the courthouse elevator on the fourth floor, Attorney Spodick and Attorney Francis informed Robert

Spodick that Attorney Spodick intended to withdraw the case, and that Attorney Francis felt this "was the right thing to do." <u>See</u> D. Fact 25.  Thus, on the morning of May 10, 2004, Attorney Spodick had foregone his original request to testify as a fact witness, had no viable damages analysis or expert, had not prepared his key witness, Robert Spodick, nor designated his prior deposition testimony, and had not brought any of his exhibits to the courtroom to start trial.  The totality of the circumstances demonstrates that after four years of extensive discovery, motion practice and pretrial proceedings, Plaintiff was simply not prepared to commence trial, which does not constitute a legal basis by which to set aside the voluntarily requested judgment of dismissal.

In sum, on the day of trial, Plaintiff basically had no case to present.  Defendants had spent much time, effort, and money preparing their defense and, in contrast to Plaintiff, were ready to proceed on May 10, 2004.  Given this record, it would be manifestly unfair to allow Plaintiff to reopen this case.

## B.    There is no other reason justifying relief under Rule 60(b)(6).

Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief, … when the judgment may work an extreme and undue hardship, … and when the asserted grounds for relief are not recognized in clauses (1) – (5) of the Rule." <u>Nemaizer</u>, 793 F.2d at 63 (citation omitted.)  "As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect." <u>Id.</u>  Although Plaintiff refers to the standard of Rule 60(b)(6) in its Motion, it cites no extraordinary circumstances which would justify its application. <u>See</u> Motion to Vacate at ¶ 4.

"Rule 60(b)(1) and 60(b)(6) are mutually exclusive, so that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." <u>United States v. Erdoss</u>, 440 F.2d 1221, 1223 (2d Cir. 1971).  <u>See</u> <u>Long v. Carberry</u>, 151 F.R.D. 240, 244 (S.D.N.Y. 1993).

As a threshold matter, all of the events cited by Plaintiff fall short of the standard set by Rule 60(b)(1) and thus cannot support a claim under 50(b)(6).

In any event, these events do not rise to the level required by 60(b)(6). Rule 60(b)(6) is only properly invoked when there are extraordinary circumstances justifying relief when the judgment may work an extreme and undue hardship. Nemaizer, 793 F.2d at 63. The language of Rule 60(b)(6) has been interpreted to require that the movant put forth a "meritorious reason" in support of its motion. See Cobos, 179 F.R.D. at 388. Rule 60(b)(6) should be invoked only when there is no other method by which justice and equity may be served. See Nemaizer, 793 F.2d. at 64. In balancing whether to apply Rule 60(b)(6), a court should heavily consider the policy restrictions on the use of the Rule, namely the courts' desire to promote finality in litigation and efficiency of judicial administration. See DeMarkey v. Greenwich Hospital Ass'n., 454 F.Supp. 351, 353 (D. Conn. 1978).

The Second Circuit has addressed the issue of what types of attorney conduct, for example, may constitute extraordinary circumstances under Rule 60(b)(6). It is well-settled within the Circuit that "an attorney's neglect of a case will not provide the basis for a Rule 60(b)(6) motion." Cobos, 179 F.R.D. at 388. See United States v. Cirami, 563 F.2d 26, 30 (2d Cir. 1977). An attorney's gross negligence is not a valid basis for relief under rule 60(b)(6) "unless the gross negligence is explained by exceptional circumstances and the movant makes a showing of client diligence in the face of the attorney's negligence." Cobos, 179 F.R.D at 388. Even in the most extraordinary cases, even those involving an attorney's mental illness, client diligence must be shown. See Cobos, 179 F.R.D at 388; Long v. Carberry, 151 F.R.D. 240, 244-45 (S.D.N.Y. 1993) (Rule 60(b)(6) motion denied; claims of plaintiff's ill health and solo attorney's personal problems "do not rise to the level of extraordinary circumstances contemplated by Rule 60 (b)(6).").

13

## C.    Undue prejudice favors denial of Plaintiff's motion.

Sound jurisprudential considerations recognize that all parties – including the courts, litigants and the public who depend on the availability of scarce judicial resources – rely on the finality of judgments disposing of cases so that public and private resources are not wasted by reopening matters once terminated after an opportunity to be heard. The record of pretrial proceedings in this case reflects the extent of the effort and expense undertaken by Defendants on this case prior to trial. But even beyond the foregoing, over the course of the final days before trial, the Defendants incurred significant expenditures of time, effort and money – they arranged with an independent consultant, who in turn arranged with United State Marshals, to have access to Judge Underhill's courtroom to set up monitors, projectors and a screen which were leased by the Defendants for trial; a technician was flown in from the west coast to assist in this process and to assist the Defendants in presenting their cases throughout trial; and seven representatives of the Defendants traveled from Los Angeles over the weekend to assist in preparing for trial and to attend trial. The attorneys fees and expenses incurred by the Defendants from May 6, 2004, to and including May 10, 2004, amount to tens of thousands of dollars expended in those four days alone. Had Attorney Spodick not voluntarily withdrawn the case with prejudice in the presence of an officer and owner of the Plaintiff on May 10th, the Defendants were prepared to, and would have, proceeded to trial that morning, as ordered by the Court. Plaintiff should not now be permitted to re-impose such burdens on the parties, non-party witnesses, the Court and the public, and especially not on the inadequate grounds it offers.

14

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to vacate should be denied.


Respectfully Submitted,

THE DEFENDANTS,



By _____

Richard W. Bowerman (ct 04181)
Ben A. Solnit (ct00292)
Elizabeth K. Andrews (ct20986)
Tyler Cooper & Alcorn, LLP
205 Church Street
Post Office Box 1936
New Haven, Connecticut 06509-1910

(203) 784-8200
(203) 777-1181 (fax)
e-mail:  bowerman@tylercooper.com
e-mail:  solnit@tylercooper.com
e-mail:  eandrews@tylercooper.com

- Their Attorneys -

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served by first-class

mail on October 18, 2004, to the following:

Peter C. Spodick, Esquire
8 Hazel Terrace
Woodbridge, Connecticut 06525


Max F. Brunswick, Esquire
12 Trumbull Street
New Haven, Connecticut 06511


Richard W. Bowerman (ct 04181)